May it please the Court, Ina Lipkin on behalf of the petitioner. The case here presents the issue of whether this petitioner established that, amongst other claims, whether resistance to gang recruitment would qualify as a grounds for asylum, whether that is a kind of social group. At the crux of the petitioner's argument is his resistance to gang recruitment was an expression of neutrality, meaning he perceived gangs to represent a sort of organization. I thought the case thought disallowed that as a political ground. Now, I actually thought you made a couple of interesting arguments in the brief, but they were as far as I could tell not made to the board, I mean, including that the political ground was really the political opinion as to whether to, you know, whether one follows the rule of law or not, which is sort of different to neutrality. I thought that was interesting. It's not — wasn't made to the board and probably wasn't proven, but it is somewhat different than what's going on in these other cases. But the argument you're making has been precluded, has it not? That i.e., decided against you. Though the petitioner was represented by a different firm at the board, he did touch upon membership in a social group consisting of young men who refused to join a gang would be an identifiable, cognizable group. He might — the previous attorney might not have delved into what all the grounds were for the petitioner to refuse the membership in that group. In our opening brief, we did flesh that out. That's because your client never articulated any grounds. I mean, he never said, I'm not joining you because I believe in following the law and not in opposing it. Your Honor, I believe the transcript will reveal that he wasn't really asked in depth by the court opposing counsel or his own counsel as to all the bases of why he refused.  I mean, it's still not in the record. Fine. It's not in the record. I'm sorry? So there's no such thing in the record. I mean, whether he was asked or not, his attorney had the obligation to establish it if he was going to rely on it, and he didn't. Well, but the court at the time, the immigration judge, also had an obligation to base his denial with an explanation as to why that couldn't have been a ground. He just made a blanket denial after finding the petitioner credible that, you know, he failed to establish membership in any group. Citing things that were not exactly relevant, for example, both the immigration judge and the board relied on the continued so-called safe presence of his mother in El Salvador to find that there would be no well-founded fear or, in addition, that he failed to establish membership in a social group consisting of family members, all the while disregarding that his father was brutally attacked by the same individual who attacked him with a knife. So how is it illogical? How would it be illogical if you're saying, they're after me because I'm a member of the family and his mother's lived there safely? That doesn't strike me as illogical to suggest that whatever persecution might have taken place of the father wasn't because of being a member of the family and wouldn't necessarily extend to him. Otherwise, you'd expect the mother to be persecuted. So what's illogical about that? But it was improper for the board to completely disregard and give no weight to the fact that she received a very threatening phone call demanding $500 or $500 of El Salvadorian money escaped from her left hand. I don't know that there's anybody in El Salvador that doesn't receive a threat at some point that doesn't support the notion that somebody's after you because you're a member of this family. Yes, but the caller evoked the petitioner's name and asked his whereabouts. You can argue with the logic, but that doesn't help you, does it? I mean, in the end, there really isn't a basis to say there wasn't substantial evidence to support the conclusion that there was not persecution based on family. I disagree because you're not the decision maker. Where's the what is it that's lacking in that conclusion? The disregard of the of the fact that the gang members evoked the petitioner's name and would presumably not have called the mother if she didn't have a son who was of gang member recruitment age. How about the, the, the? That, of course, is not proof that it was because she was a member of the family. He was a member of the family. I mean, you're mixing up all the different grounds that you're arguing with, right? If it was because it was a member of the family, then they would have been after the mother as well as the son. If it was because he was a member, because he opposed the gangs, they'd be after the son, but that's been held not to be a cognizable social group. But one can have more than one ground for a nexus. I know you could, but you can't mix them up. You have to, I mean, you have to make a set of arguments that are coherent with regard to each of them. Exactly. So there is no evidence in the record that the gang targeted the mother outside of the fact, or for a different reason, but for her relationship to their petitioner. Well, there's no evidence that they targeted the mother. I should say that. But let's move to the social group, the broader social group. Unfortunately for your client, two months ago our court comes out with, with Reyes. And in that case, we reject the social group that's former members of the Mara 18 gang in El Salvador who have renounced their membership. How is your case any different from that one? Well, first, the petitioner was never a member of a gang. So rather, he's someone who had always refused. But how does that make the social group identification any more meaningful? The problem in Reyes is the Court affirmed the BIA's conclusion that's not a viable definition for a social group for the purposes of the statute. And I don't see how your client doesn't have the same problem. Well, the petitioner is distinguishable in the sense that he would be easily recognizable. He did not have any tattoos, did not have any other identification. I actually thought, I think that is an interesting argument, that at some point somebody might be able to prove up on a record, but you didn't really do it here. I mean, it could be that at this point in El Salvador there are so many gang members that if you're walking around without gang identity, you're quite obvious and a target. But you didn't prove that up in any useful fashion. That's why remand would be very useful. At that point, the Petitioner could establish before the Court that he doesn't have any tattoos or other. We don't usually have do-overs to prove something that wasn't proven the first time. Why should we send it back to give a do-over? Because the Petitioner did establish that refusal to participate in a group that holds such significant power. Establish that he doesn't have a tattoo? It's not in the record. At the record? It's not in the record. Okay. I mean, I'm just going back to the first argument we made, where in the brief I explained how this case is different from Santos-Limos. I think I'll save the rest of my time for Roboto. Thank you very much. Thank you. May it please the Court? This is Dana Camilleri for the Attorney General. In this case, Galdamez has not shown that he suffered past persecution at the hands of the gangs when he described simple harassment. Well, I don't know about that. I mean, in addition to the simple harassment, he established that there were threats and that he was beaten up fairly badly. Actually, he said that he did not seek or require medical attention and had no— Fine. Okay. But there were 12 people who beat him up. But he didn't require medical attention or describe being particularly injured after that event. And he claims that he was threatened several different times. He claims that he was threatened some days— With a knife at one point, I think. Yes, although that man did not identify himself as a gang member. And I don't even think the testimony brought that out. In terms of the harassment, when he would walk home, he would be hassled for money. Some days he would provide money. All right. Leave out the harassment. Okay. But the rest of it, I think it's marginal. I mean, even— Okay. So let's go to the other issues. To well-founded fear? Yes. Well, no, to the nexus issue. To the nexus to what? Okay. Most of these arguments were waived or not brought up before the agency. The political opinion, which is a completely separate ground from a particular social group, not argued before the agency whatsoever. And then I think in the opening brief they pivoted away from the particular social group aside from the immediate family. In fact, did not really challenge that portion of the decision, which is why we argued that was waiver. So it's difficult to see— This is more hypothetical than based on this record, but it does seem to me that in a sufficiently gang-pervasive place, which El Salvador may be at this point, that for young men of a certain age not having gangs in New York tattoos may be precisely the kind of marker of a literally visible social group. Now, I understand this record doesn't establish it, but there's no case that actually deals with that either on a record that does establish it, is there? I'm not aware of any cases where that was raised before the board. Certainly that's something that the agency would need to get the first crack at. Is there any case dealing with being in one gang as opposed to another gang? I mean, it seems to me that would be sort of a classic social group. I mean, if your claim was that my problem is that I'm in X gang and Y gang is after X gang, is there any case about whether that's a social group? I have not encountered one. I believe that there are maybe only one or two organizations that are very prevalent in El Salvador. The Maras, essentially. But I'm sort of thinking of, you know, domestic gang organizations, and it seems to me in some ways they're kind of classic social groups in the sense that, you know, these young men say, you know, what are you from? Meaning, what gang are you from? We have all these gang cases. And that seems, and then they should be able, because they're not in the right gang. That sounds pretty much like a social group problem. That's possible. It would be up to the board to. But that's not what we're discussing. Yeah, that's not what we're dealing with in this case. As for the immediate family, the argument was specifically the mother, the father. And she, despite receiving that threatening phone call, she did not pay and no harm came to her. And she's just remained there, I believe it was a decade, unharmed in El Salvador. So that really undercuts that claim. And, again, in the opening brief, they did not address that particular portion of the board's decision. Okay. Are there any other questions for me? No. Thank you very much. Thank you very much. No? Okay. Thank you very much. Thank both of you for your arguments in Galdamez v. Sessions. The case is submitted. And we will go on to Copeland v. Ryan. And for planning purposes, we will take a break after this case.
judges: Berzon, Clifton, Garbis